## CALIFORNIA *v.* FEDERAL POWER COMMISSION ET AL.

No. 187. Argued March 1, 1962.—
Decided April 30, 1962.

*William M. Bennett* argued the cause and filed briefs for petitioner.

*Solicitor General Cox* argued the cause for the Federal Power Commission, respondent. With him on the briefs were *Assistant Attorney General Orrick, John G. Laughlin, Jr., John C. Mason, Ralph S. Spritzer, Howard E. Wahrenbrock, Robert L. Russell* and *Arthur H. Fribourg.*

*Arthur H. Dean* argued the cause for the El Paso Natural Gas Co., respondent. With him on the briefs were *Charles V. Shannon, Stanley M. Morley* and *Stephen Rackow Kaye.*

Opinion of the Court by MR. JUSTICE DOUGLAS, announced by MR. JUSTICE BRENNAN.

El Paso Natural Gas Company first acquired the stock of the Pacific Northwest Pipeline Corp. and then applied to the Federal Power Commission for authority to acquire the assets pursuant to § 7 of the Natural Gas Act, 52 Stat. 825, 15 U. S. C. § 717f (c). This application was dated August 7, 1957. Prior thereto, on July 22, 1957, the Federal Government commenced an action against El Paso and Pacific Northwest, alleging that El Paso's acquisition of the stock of Pacific Northwest violated § 7 of the Clayton Act,[1] 38 Stat. 731, as amended, 64 Stat. 1125, 15 U. S. C. § 18. On September 30, 1957, El Paso and Pacific Northwest filed a motion to dismiss the antitrust suit or to stay it, pending completion of the proceedings before the Commission. On October 21, 1957, that motion was denied after hearing; and we denied certiorari. 355 U. S. 950.

---

[1] Section 7 of the Clayton Act provides in relevant part:

"No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

"No corporation shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of one or more corporations engaged in commerce, where in any line of commerce in any section of the country, the effect of such acquisition, of such stocks or assets, or of the use of such stock by the voting or granting of proxies or otherwise, may be substantially to lessen competition, or to tend to create a monopoly."

In May and June 1958, the Department of Justice wrote four letters to the Commission, asking that the proceeding be stayed pending the outcome of the antitrust suit. On July 29, 1958, the Department of Justice was advised by the Commission that it would not stay its proceedings. The Commission invited the Antitrust Division of the Department to participate in the administrative proceedings; but it did not do so.

The hearings before the Commission started September 17, 1958. On October 2, 1958, El Paso and Pacific Northwest moved in the District Court for a continuance of the antitrust suit. On October 6, 1958, the Department of Justice asked the Commission to postpone its hearing, pending final outcome of the antitrust suit which had then been set for trial November 17, 1958. On October 7, 1958, the Commission wrote the District Court that if the court denied El Paso and Pacific Northwest's motion for a continuance and proceeded with the antitrust trial, the Commission would continue its merger hearings to a date that would not conflict with the trial date of the antitrust case, but that if the court granted the motion for continuance, the Commission would proceed with its hearing. On October 13, 1958, the District Court continued the antitrust suit until the final decision in the administrative proceedings. The latter proceedings were concluded, the Commission authorizing the merger on December 23, 1959. 22 F. P. C. 1091, 23 F. P. C. 350. The merger was consummated December 31, 1959.

Petitioner intervened in the administrative proceedings August 27, 1957, and obtained review by the Court of Appeals, which affirmed the Commission (111 U. S. App. D. C. 226, 296 F. 2d 348), Judge Fahy dissenting. We granted certiorari, 368 U. S. 810.

Evidence of antitrust violations is plainly relevant in merger applications, for part of the content of "public convenience and necessity" as used in § 7 of the Natural

Gas Act is found in the laws of the United States. *City of Pittsburgh* v. *Federal Power Commission,* 99 U. S. App. D. C. 113, 237 F. 2d 741.

Immunity from the antitrust laws is not lightly implied. The exemption of agricultural cooperatives from the antitrust laws granted by § 6 of the Clayton Act and § 1 and § 2 of the Capper-Volstead Act of 1922 became relevant in *Milk Producers Assn.* v. *United States,* 362 U. S. 458. While § 7 of the Clayton Act gave immunity to "transactions duly consummated pursuant to authority given by . . . the Secretary of Agriculture under any statutory provision vesting such power in such . . . Secretary," we held that the only authority of the Secretary was to approve "marketing agreements" (*id.,* 469–470) and not other types of agreements or restraints, typically covered by the antitrust laws. Accordingly, we held that the District Court was authorized to direct the cooperative to dispose as a unit of the assets of an independent producer that had been acquired to stifle competition and restrain trade. We could not assume that Congress, having granted only a limited exemption from the antitrust laws, nonetheless granted an overall inclusive one. See *United States* v. *Borden Co.,* 308 U. S. 188, 198–202. "When there are two acts upon the same subject, the rule is to give effect to both if possible." *Id.,* at 198. Here, as in *United States* v. *R. C. A.,* 358 U. S. 334, while "antitrust considerations" are relevant to the issue of "public interest, convenience, and necessity" (*id.,* at 351), there is no "pervasive regulatory scheme" (*ibid.*) including the antitrust laws that has been entrusted to the Commission. And see *National Broadcasting Co.* v. *United States,* 319 U. S. 190, 223. Under the Interstate Commerce Act, mergers of carriers that are approved have an antitrust immunity, as § 5 (11) of that Act specifically provides that the carriers involved "shall be and they are hereby relieved from the operation of the antitrust

laws . . . ." See *McLean Trucking Co.* v. *United States*, 321 U. S. 67.

There is no comparable provision under the Natural Gas Act. Section 7 of the Clayton Act—which prohibits stock acquisitions "where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly"—contains a proviso that "Nothing contained in this section shall apply to transactions duly consummated pursuant to authority given by the . . . Federal Power Commission . . . under any statutory provision vesting such power in such Commission . . . ." The words "transactions duly consummated pursuant to authority" given the Commission "under any statutory provision vesting such power" in it are plainly not a grant of power to adjudicate antitrust issues. Congress made clear that by this proviso in § 7 of the Clayton Act ". . . it is not intended that . . . any . . . agency" mentioned "shall be granted any authority or powers which it does not already possess." S. Rep. No. 1775, 81st Cong., 2d Sess., p. 7. The Commission's standard, set forth in § 7 of the Natural Gas Act, is that the acquisition, merger, etc., will serve the "public convenience and necessity." If existing natural gas companies violate the antitrust laws, the Commission is advised by § 20 (a) to "transmit such evidence" to the Attorney General "who, in his discretion, may institute the necessary criminal proceedings." Other administrative agencies are authorized to enforce § 7 of the Clayton Act when it comes to certain classes of companies or persons; [2] but the Federal Power Commission is not included in the list.

---

[2] Section 11 of the Clayton Act, 15 U. S. C. § 21, vests authority to enforce compliance with § 7 by the persons subject thereto:

". . . in the Interstate Commerce Commission where applicable to common carriers subject to the Interstate Commerce Act, as amended; in the Federal Communications Commission where applicable to com-

We do not decide whether in this case there were any violations of the antitrust laws. We rule only on one select issue and that is: should the Commission proceed to a decision on the merits of a merger application when there is pending in the courts a suit challenging the validity of that transaction under the antitrust laws? We think not. We think the Commission in those circumstances should await the decision of the courts.

The Commission considered the interplay between § 7 of the Clayton Act and § 7 of the Natural Gas Act and said:

"Section 7 of the Clayton Act, under which the antitrust suit was brought, prohibits the acquisition by one corporation of the stock or assets of another corporation where 'the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.' Exempt, however, are transactions consummated pursuant to Commission authority. This shows, reasons the presiding examiner, that Congress placed reliance on the Commission not to approve an acquisition of assets in violation of the injunction of the Clayton Act, unless in the carefully exercised judgement of the Commission, the acquisition would nevertheless be in the public interest. What we are attempting to arrive at is the public convenience and necessity. In reaching our determination, we do not have authority to determine whether a given transaction is in violation of the Clayton Act, but we are required to consider the bear-

mon carriers engaged in wire or radio communication or radio transmission of energy; in the Civil Aeronautics Board where applicable to air carriers and foreign air carriers subject to the Civil Aeronautics Act of 1938; in the Federal Reserve Board where applicable to banks, banking associations, and trust companies; and in the Federal Trade Commission where applicable to all other character of commerce to be exercised as follows: . . ."

ing of the policy of the antitrust laws on the public convenience and necessity. *City of Pittsburgh* v. *F. P. C.*, 237 F. 2d 741, 754 (CADC). With the presiding examiner, we find that any lessening of competition whether in the consumer markets or the producing fields, does not prevent our approving the merger because there are other factors which outweigh the elimination of Pacific as a competitor. In any case, it appears that any lessening of competition is not substantial." 22 F. P. C. 1091, 1095.

Apart from the fact that the Commission did undertake to make a finding reserved to the courts by § 7 of the Clayton Act,[3] there are practical reasons why it should have held its hand until the courts had acted.

One is that if the Commission approves the transaction and the courts in the antitrust suit later hold it to be illegal, an unscrambling is necessary. *Milk Producers Assn.* v. *United States, supra.* Thus a needless waste of time and money may be involved. Also these unscrambling processes often raise complicated and perplexing problems on tax matters and otherwise, as our recent decision in *United States* v. *du Pont & Co.*, 353 U. S. 586; 366 U. S. 316, shows.[4] Such complexities

---

[3] Where "the effect of such acquisition may be substantially to lessen competition." Section 7, *supra*, note 1.

[4] In that case, which also was under § 7 of the Clayton Act, we said: "Section 7 is designed to arrest in its incipiency not only the substantial lessening of competition from the acquisition by one corporaton of the whole or any part of the stock of a competing corporation, but also to arrest in their incipiency restraints or monopolies in a relevant market which, as a reasonable probability, appear at the time of suit likely to result from the acquisition by one corporation of all or any part of the stock of any other corporation." 353 U. S., at 589. As to the remedy we stated in *United States* v. *du Pont & Co.*, 366 U. S., at 334: "We think the public is entitled to the surer,

are inherent in the situation, as approval of the transaction by the Commission would be no bar to the antitrust suit. See *United States* v. *R. C. A., supra.*

Another practical reason is that a transaction consummated under the aegis of the Commission as being a matter of "public convenience and necessity" is bound to carry momentum into the antitrust suit. The very prospect of undoing what was done raises a powerful influence in the antitrust litigation, as *United States* v. *du Pont & Co., supra,* illustrates.

The orderly procedure is for the Commission to await decision in the antitrust suit before taking action.

Section 7 of the Clayton Act, so far as material here, prohibits stock acquisitions having a prescribed effect. Section 7 of the Natural Gas Act confers jurisdiction on the Commission over the acquisition of assets of natural gas companies,[5] not over stock acquisitions in them. Had the Commission stayed its hand and had the courts found the stock acquisition unlawful, the entire transaction would have been set aside *in limine.* Had the courts found the stock acquisition lawful, presumably no problems under § 7 of the Clayton Act would have remained.

---

cleaner remedy of divestiture. The same result would follow even if we were in doubt. For it is well settled that once the Government has successfully borne the considerable burden of establishing a violation of law, all doubts as to the remedy are to be resolved in its favor."

[5] Section 7 (c) provides in relevant part:

"No natural-gas company or person which will be a natural-gas company upon completion of any proposed construction or extension shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, or undertake the construction or extension of any facilities therefor, or acquire or operate any such facilities or extensions thereof, unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations."

When the Commission proceeds in the face of a pending but undecided antitrust suit and approves a merger that has been preceded, as this one was, by a stock acquisition, it in substance treats the entire relation of the companies—from the acquisition of stock to the merger—as an integrated transaction. If that administrative action were approved, the Commission would be allowed to do by indirection what it has no jurisdiction to do directly.

It is not for us to say that the complementary legislative policies reflected in § 7 of the Clayton Act on the one hand and in § 7 of the Natural Gas Act on the other should be better accommodated. Our function is to see that the policy entrusted to the courts is not frustrated by an administrative agency. Where the primary jurisdiction is in the agency, courts withhold action until the agency has acted. *Texas & Pac. R. Co.* v. *Abilene Oil Co.,* 204 U. S. 426. The converse should also be true, lest the antitrust policy whose enforcement Congress in this situation has entrusted to the courts is in practical effect taken over by the Federal Power Commission. Moreover, as noted, the Commission in holding that "any lessening of competition is not substantial" was in the domain of the Clayton Act, a domain which is entrusted to the court in which the antitrust suit was pending.

The judgment of the Court of Appeals is reversed and *the case is remanded for proceedings in conformity with this opinion.*

*It is so ordered.*

Mr. Justice Frankfurter took no part in the decision of this case.

Mr. Justice White took no part in the consideration or decision of this case.

Mr. Justice Harlan, whom Mr. Justice Stewart joins, dissenting.

In this case originating in the Federal Power Commission, the Court today announces a new and surprising antitrust procedural rule: If the Commission is asked to "proceed to a decision on the merits of a merger application when there is pending in the courts a suit challenging the validity of that [merger and its antecedent] transaction[s] under the antitrust laws," the Commission must abstain from a determination and "await decision in the antitrust suit before taking action." (*Ante,* pp. 487, 489.)

The holding does not turn on any facts or circumstances which may be said to be peculiar to this particular case. It is not limited to Federal Power Commission proceedings. Without adverting to any legal principle or statute to support its decision, the Court appears to lay down a pervasive rule, born solely of its own abstract notions of what "orderly procedure" requires, that seemingly will henceforth govern every agency action involving matters with respect to which the antitrust laws are applicable and antitrust litigation is then pending in the courts.

I cannot subscribe to a decision which broadly works such havoc with the proper relationship between the administrative and judicial functions in matters of this kind. The decision, on the one hand, in effect transfers to the Antitrust Division of the Department of Justice regulatory functions entrusted to administrative agencies, and on the other hand deprives the courts in government antitrust litigation of the authority given them by statute to determine whether or not interlocutory relief is necessary or appropriate. What this new rule entails is illustrated by this case: A business transaction of great magnitude and importance, which the Federal Power

Commission has found to be in the public interest, is, at least for the time being, set for naught, without the slightest inquiry into whether the antitrust charges leveled against it are weighty or not. The Court's action is the more unusual because it is taken (1) despite the antitrust court's denial of interlocutory relief when such relief was belatedly sought by the Government; (2) in the face of the considered judgment of the Solicitor General, representing the public interests respectively involved in the administrative and antitrust proceedings, that determination of the ultimate effect of the Commission's order should be left to abide the event of the antitrust case, and that meanwhile such order should be allowed to stand; and (3) at the instance only of an intervenor in the Commission's proceeding which was not even a party to the Government's antitrust suit.

The undiscriminating nature and reach of this decision become apparent when attention is focused on the procedural events occurring prior to the order of the Commission which is here under attack. On July 22, 1957, the Department of Justice instituted a civil action in the United States District Court in Utah against the El Paso Natural Gas Company and the Pacific Northwest Pipeline Company, seeking to restrain an alleged violation of § 7 of the Clayton Act. This violation was said to have occurred when, beginning in January 1957, El Paso embarked on a program of acquiring nearly all of Pacific's outstanding common stock. The complaint asked that the purchase be declared to be a violation of § 7 of the Clayton Act and that El Paso be directed to divest itself of Pacific's stock. No interlocutory relief appears to have been requested.

On August 7, 1957, El Paso filed with the Federal Power Commission its application for authorization to merge Pacific's assets with its own. Despite this announced intention further to intermingle the affairs of the two cor-

porations, the Government did not seek temporary relief from the District Court in Utah. El Paso, on the other hand, contended that "primary jurisdiction" with regard to the merger resided with the Commission and sought to have the antitrust action stayed. Its motion was denied by the District Court, and on March 3, 1958, we denied leave to file a petition for common-law certiorari to that decision. 355 U. S. 950.

When the case was returned to the District Court the Government again made no effort to obtain from that court an order maintaining the status quo pending the outcome of the suit. Instead, the Assistant Attorney General in charge of the Antitrust Division suggested to the Commission that it stay its own proceedings until the antitrust suit had terminated. When this request was rejected by the Commission, the Antitrust Division withdrew from the Commission proceedings despite an express invitation from the Commission that it participate.

Hearings before the Commission's examiner were scheduled to begin on September 17, 1958, and the trial of the antitrust suit in the District Court was set for November 17, 1958. At a hearing on several pretrial matters held in the District Court on September 5 and 6, the Government, for the first time, moved for a temporary injunction to restrain the asset merger even if the Commission's approval were forthcoming.[1] That motion was denied and not renewed thereafter. The Commission's hearings began on September 17 and were recessed on September 26 until November 12.

El Paso again moved in the District Court for a continuance of the antitrust trial until after the Commission had passed on the merger application, and the Govern-

---

[1] The fact that such a motion was made and denied does not appear in the record before this Court. However, it is asserted in El Paso's brief and is not denied by any of the other parties.

ment once more asked the Commission to stay its proceedings pending the outcome of the antitrust case. While noting that the Government had refused the Commission's invitation to intervene in the merger proceedings, the Commission agreed to defer to the District Court. It notified the court that if El Paso's motion for a continuance of the trial were denied, the Commission would continue its merger proceeding to a later date. On October 13, 1958, the District Court issued an order granting El Paso's motion and continued the antitrust trial "until the final determination by the Federal Power Commission of the applications now pending before it." The Government has never sought to review this order by mandamus or by any other available means. The Commission subsequently held its hearings and authorized the merger of El Paso and Pacific in an order dated December 23, 1959. It is that order which the Court today in effect holds to have been entered without jurisdiction.

The Court relies on three "practical reasons" to support its perplexing conclusion that despite the Government's failure promptly to seek relief *pendente lite* in the antitrust suit, its failure to press for review of the denial of such relief when belatedly sought, and the Commission's expressed willingness to defer to the antitrust court, the Commission was nonetheless required to withhold approval of the merger application: (1) If the asset merger were approved and executed, and the stock purchase thereafter held to be illegal, an "unscrambling" involving "needless waste of time and money" would be necessary; (2) such an "unscrambling" would "raise complicated and perplexing problems on tax matters and otherwise"; (3) the Commission's approval of the asset merger "is bound to carry momentum into the antitrust suit." (*Ante,* pp. 488–489.) Whatever weight these considerations may be deemed to have, I think that "orderly proce-

dure" required their determination, at least in the first instance, by the antitrust court, if indeed they were not rejected by the District Court on the Government's 1958 motion to enjoin consummation of the merger. Their consideration by this Court as an original matter is entirely inappropriate, and in no event do any of them affect the *validity* of the Commission's order approving the merger.[2]

## I.

Section 15 of the Clayton Act, 15 U. S. C. § 25, grants jurisdiction to the United States District Courts "to prevent and restrain violations" of the Clayton Act, and empowers the United States Attorneys "to institute proceedings in equity to prevent and restrain such violations." The same statutory section provides that pending determination of the merits of a complaint filed by the United States "and before final decree, the court may at any time make such temporary restraining order or prohibition as shall be deemed just in the premises." Consequently, it is the duty of the District Court before which an antitrust suit is pending to pass on the desirability of temporary relief in order to avoid later problems of "unscrambling." In the case before us, it was not until more than a year after the Government knew of El Paso's intention to merge Pacific's assets with its own that it requested the District Court to enjoin the execution of

---

[2] Because of the posture of this case, I would not reach the question as to what weight should be given to the pendency of administrative merger proceedings by an antitrust court which is asked to grant interlocutory relief. However, I think more can be said than the Court does in favor of staying the hand of an antitrust court pending consideration by the appropriate agency of matters touching on "those areas . . . in which active regulation has been found necessary to compensate for the inability of competition to provide adequate regulation." *Federal Communications Comm'n* v. *RCA Communications, Inc.*, 346 U. S. 86, 92.

this plan.   The court's denial of the temporary injunction must be presumed to have been based on its evaluation of the likelihood of success of the antitrust suit and of the difficulties that might arise if interlocutory relief were denied.   Not having renewed its motion, the Government may surely not revive it indirectly by attacking the Commission's order.   Moreover, by what authority is petitioner, the State of California, an intervenor only in the Commission's proceedings, empowered to assert claims relating to the enforcement of the antitrust laws that are unavailable to the Government, the plaintiff in the antitrust action?

## II.

Similarly, whatever is meant by the suggestion that the Commission's approval carries "momentum" into the antitrust suit, this factor is one that should be remedied, if necessary, by purging the antitrust proceedings of any improper influence deriving from the agency determination, not by invalidating the administrative action. The Court's holding—which is unnecessary to a decision of this case and, as the Government argues, also premature [3]—that the concluding proviso of § 7 of the Clayton Act gives the Commission's approval of this asset merger no immunizing effect against the antitrust claim, surely lends added support to the view that the agency is permitted to consider this application as it might consider any other which suggests no difficulties under the antitrust laws.   If the Commission's approval is irrelevant to the merits of the Government's

---

[3] Whatever may be the impact on a § 7 action of the Commission's approval of this merger, it can be felt only in the antitrust suit. Consequently, I would, as the Solicitor General has suggested, leave this issue open for consideration in the District Court should the agency's order be asserted as a defense in that action.

antitrust suit, it is the court considering the antitrust claim which should guard itself against giving weight to this irrelevancy, not the Commission passing on the merger application. And if the lower courts should ultimately go wrong in this regard, their error would be correctible in this Court.

Likewise there is little substance to the difficulty which this Court finds in a court "undoing what was done" (*ante*, p. 489) by the Commission. Had the antitrust trial court been fearful on that score it could have entered an appropriate interlocutory order ensuring that nothing would be done while the litigation was pending.

## III.

Finally, I do not think that the record in this case justifies a conclusion that the Commission's refusal to postpone consideration of the merger application amounted to an abuse of discretion. On the Court's premise that the agency's approval did not immunize the transaction from antitrust liability, the Commission's action in granting the certificate of public convenience and necessity did no more than *permit* the merger to be consummated subject to all possible antitrust infirmities. And even proceeding on the Commission's premise that the proviso of § 7 of the Clayton Act gives it the power to immunize mergers from antitrust liability, its decision to go ahead after being notified by the District Court that the motion to continue the antitrust suit had been granted could hardly be regarded as an abuse of discretion.

In conclusion, the Court's decision in this case creates a wholly artificial imbalance between antitrust law enforcement and administrative regulation with respect to federally regulated industries. By displacing the continuing supervision of a court over such interlocutory

terms as are "just in the premises" with an absolute rule prohibiting the regulating agency from considering applications relating to matters which are also involved in a pending antitrust suit, this decision seems to leave no room for sensible accommodation of the two sets of interests in a given instance. Neither the inflexible rule announced by the Court nor its decision on the facts of this case is supported by reason or authority.

I would affirm.