**UNITED STATES of America, Plaintiff,**

v.

**AMERICAN NATURAL GAS COMPANY, Northern Natural Gas Company, Peoples Gas Light and Coke Company, Ralph T. McElvenny, John F. Merriam and James F. Oates, Jr., Defendants.**

**No. 59 CR 145.**

United States District Court
N. D. Illinois, E. D.
July 24, 1962.

Fred D. Turnage, Robert G. Levy, John W. Martin, Jr., Attys., Dept. of Justice, for plaintiff.

William Piel, Jr., and George C. Kern, Jr., Sullivan & Cromwell, New York City, Carl S. Lloyd and Robert H. Bork, Kirkland, Ellis, Hodson, Chaffetz & Masters, Charles A. Bane, Isham, Lincoln & Beale, Chicago, Ill., for Northern Natural Gas Co. and John F. Merriam.

Kenneth F. Burgess, Stuart S. Ball, Arthur R. Seder, Jr., H. Blair White and Jules M. Perlberg, Sidley, Austin, Burgess & Smith, Chicago, Ill., for American Natural Gas Co. and Ralph T. McElvenny.

Carl McGowan, Roland D. Whitman and David C. Baum, Ross, McGowan, Hardies & O'Keefe, John T. Chadwell, James A. Rahl and James E. Hastings, Snyder, Chadwell, Keck, Kayser & Ruggles, Chicago, Ill., for The Peoples Gas Light and Coke Co. and John F. Oates, Jr.

WILL, District Judge.

There are two motions presently before the Court in this cause. One is the motion of the individual defendants to dismiss the indictment as to them on the ground that it fails to allege an offense cognizable under sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2. This motion has been definitively determined by the decision of the Supreme Court in United States v. Wise, 370 U.S. 405, 82 S.Ct. 1354, 8 L.Ed.2d 590 (June 25, 1962). Accordingly, it is herewith denied.

The second motion is that of both the corporate and individual defendants to dismiss the indictment on grounds vari-

ously stated in written briefs and on oral argument. Those contentions advanced in defendants' written briefs—which relate to the question of primary jurisdiction—have also recently been the subject of Supreme Court consideration in its decision in California v. Federal Power Commission, et al., 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (April 30, 1962).

The effect of this decision, however, is not so clearly dispositive of the instant motion as is the decision in Wise conclusive of the first motion. For this reason and because on oral argument defendants addressed themselves to an issue different from that set forth in their briefs, the Court deems it appropriate to explain the reasons for its ruling.

The defendants contend in their briefs that the present indictment is an inherent interference with subject matter which Congress has placed within the comprehensive control of the Federal Power Commission, and, as such, it should be dismissed on the ground of primary jurisdiction. The indictment itself, as amplified by the government's bill of particulars, charges agreement and concert of action by the defendants and their co-conspirators to exclude Midwestern Gas Transmission Company as a competitor in the interstate transportation and sale of natural gas by such activities, among others, as (1) boycotting and refusing to purchase gas from Midwestern, (2) agreeing among themselves not to compete with each other, (3) absorbing markets otherwise available to Midwestern, and (4) soliciting other competitors of Midwestern to join the alleged conspiracy.

The general position of the government is that in no event do the charges against the defendants call for an application of the doctrine of primary jurisdiction.

While the defendants argue as the basis of their position that the natural gas industry is pervasively regulated from "well to burner tip", the brunt of their analysis is directed toward that portion of industry activity which is covered by the indictment and bill of particulars. Indeed, if defendants were to stand or fall solely on the determination of the question of pervasive regulation, they would be foreclosed on this aspect of their motion without more, since the Supreme Court in the California case, supra, after asserting that "(i)mmunity from antitrust laws is not lightly implied" and discussing certain instances in which immunity has been granted, stated:

> "Here, as in United States v. R. C. A., 358 U.S. 334, 82 S.Ct. 901, 8 L.Ed.2d 54, while 'antitrust considerations' are relevant to the issue of 'public convenience and necessity' * * * there is no 'pervasive regulatory scheme' * * * including the antitrust laws that has been entrusted to the (Federal Power) Commission."

This court recognizes, however, that the foregoing language can be said to be limited to the facts of the California case. Therefore, the extent to which that language and the decision itself are applicable here must be analyzed.

In that case, the Federal Power Commission and the Department of Justice were both considering a proposed acquisition by the El Paso Natural Gas Company of the stock of the Pacific Northwest Pipeline Corporation. The Federal Power Commission's consideration took the form of hearings on El Paso's application for approval of the acquisition pursuant to section 7 of the Natural Gas Act, 15 U.S.C.A. § 717f(c); the Department of Justice's consideration took the form of an action in the Federal District Court alleging that the acquisition violated section 7 of the Clayton Act, 15 U.S.C.A. § 18.

On several occasions, the Justice Department requested the Federal Power Commission to stay its proceedings pending the outcome of the antitrust litigation, but the Commission refused. For its part, the Commission invited the

Justice Department to participate in its hearings, but the Department (Antitrust Division) failed to do so. Thereafter, the District Court granted a motion of the defendants for continuance of the antitrust trial until final decision in the administrative proceedings.

Those proceedings were subsequently concluded and the acquisition authorized by the Commission. During the course of the Federal Power Commission hearings, however, the State of California intervened in those proceedings and obtained review by the Court of Appeals, which affirmed the Commission's approval of the merger, People of State of Calif. v. Federal Power Com., D.C.Cir. 1961, 296 F.2d 348. The Supreme Court reversed the judgment of the Court of Appeals and vacated the order of the Commission approving the merger on the grounds that (1) the antitrust aspects of the proposed acquisition were primarily the concern of the Department of Justice, and (2) the antitrust litigation in the federal court took precedence over the Commission's proceedings. It was the Commission, therefore, which should have stayed its hand, not the Justice Department.

The relevance of the California decision to the present motion is apparent. There is no doubt that in considering El Paso's application to acquire the assets of Pacific Northwest, the Federal Power Commission was acting within the purview of its authority under the Natural Gas Act. Section 7 of that Act empowers the Commission to issue certificates of public convenience and necessity in just such cases, and imposes on it a duty to determine the propriety of granting any such certificates.

There could be no clearer Congressional mandate prescribing the Commission's right of action and right of way. Yet the Supreme Court, in construing other facets of the Natural Gas Act and the interplay of section 7 of that Act and section 7 of the Clayton Act, found that the Commission must give way to the Justice Department, even within an area of its unquestioned authority. On this the Court stated:

" * * * The Commission's standard, set forth in § 7 of the Natural Gas Act, is that the acquisition, merger, etc., will serve the 'public convenience and necessity.' If existing natural gas companies violate the antitrust laws, the Commission is advised by § 20(a) to 'transmit such evidence' to the Attorney General 'who, in his discretion, may institute the necessary criminal proceedings.' Other administrative agencies are authorized to enforce § 7 of the Clayton Act when it comes to certain classes of companies or persons; but the Federal Power Commission is not included in the list."

One certain effect of the foregoing is that for purposes of the doctrine of primary jurisdiction, the natural gas industry is not pervasively regulated from "well to burner tip". But, more importantly, if the Commission must accommodate itself to antitrust policy by postponing action on certification proceedings which involve the very same transaction to be tried in the antitrust merger litigation, it would seem even more clear that the Commission does not have either responsibility or authority to decide alleged antitrust violations which occur prior to the time it embarks on its hearings, and which will not necessarily determine the outcome of the certification proceedings.

Such is the situation disclosed by the pleadings and other documents in the present case. The indictment herein is directed against activities which allegedly precluded Midwestern from effectively entering the competition before the Commission. As the government points out, there are numerous preliminary steps which a potential entrant into the market must take before applying for certification. "These steps include such matters as procuring a gas supply, contracting with prospective customers, arranging financing, obtaining commitments for pipe and other equip-

ment necessary for the proposed facilities, and qualifying to do business in the various states in which sales are to be made" (page 14, Brief of the United States in Opposition to Defendants' Motion to Dismiss on Grounds of Primary Jurisdiction).

■ Anti-competitive conduct at this stage of entry into the market is not a primary concern of the Commission. In certification proceedings of this nature, the Commission is required to award the franchise involved to the company or companies which demonstrate greatest ability to render the best service to the public at the lowest cost. While alleged antitrust violations are a factor which may be considered, the Commission could not properly award a certificate to a company whose ability to qualify, let alone perform, had been largely destroyed even though it found that this was caused by the illegal concerted action of its competitors. In such circumstances, presumably the Commission would seek recourse to that portion of section 20(a) of the Natural. Gas Act, 15 U.S.C.A. § 717s(a), which provides that "(t)he Commission may transmit such evidence as may be available * * concerning apparent violations of the Federal antitrust laws to the Attorney General, who, in his discretion, may institute the necessary criminal proceedings".

■ Whatever the manner in which the Antitrust Division procured the information relating to the present indictment however, there is no indication from the record herein of any jurisdictional conflict or dispute between the Department of Justice and the Federal Power Commission, as there was in the California case. Accordingly, there is even less reason here to invoke the doctrine of primary jurisdiction. In the light of the foregoing, it appears that the Attorney General and the Justice Department are the proper custodians of the antitrust violations alleged in the present indictment.

■ On oral argument defendants urged that the indictment, even when viewed in the light most favorable to the government, fails to charge an offense cognizable under sections 1 and 2 of the Sherman Act. In support of this position, they relied in great part on the decision of the Supreme Court in Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). But that case, which held that sections 1 and 2 of the Sherman Act do not apply to attempts to influence the passage or enforcement of laws, at least on the basis of the facts therein, was largely predicated on the premise that such an action invades the area of legitimate political activity and encroaches on the right of petition which " * * * is one of the freedoms protected by the Bill of Rights." The lesson which defendants herein seek to extract from the Noerr case for purposes of the present motion is that innocent and legitimate activities of the market place may have the effect of harming a competitor but the fact of harm, if legitimately inflicted, cannot make the perpetrator subject to sanctions under the Sherman Act.

The Court agrees with the import of the statement. However, it cannot be said at this juncture of the case that the government will be unable to adduce proof to substantiate the charges of the indictment or that the defendants will be able to establish that all of the acts proved by the government were innocent and legitimate business activities.

Furthermore, the concerted activity charged in the instant case, while it may ultimately turn out to be innocent and legitimate, appears preliminarily to be much closer to the practices customarily condemned in Sherman Act indictments and treble damage suits than the practices attacked in the Noerr case. For these reasons and for the reasons set out in that portion of the opinion dealing with the question of primary jurisdic-

tion, the motion of the corporate and individual defendants to dismiss the indictment will be denied.

An order consistent with the foregoing will be entered.