J. Kenneth **FREDRICKSON** and Alan Surgal, Individually, and on behalf of a class of persons similarly situated, Plaintiffs,

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,** et al., Defendants.

No. 73 C 216.

United States District Court, N. D. Illinois, E. D. Sept. 9, 1974.

Aram A. Hartunian, Pressman & Hartunian, Chicago, Ill., for plaintiff.

Charles W. Boand, Wilson & McIlvaine, Melville B. Bowen, Jr., Meyers & Matthias, Dean A. Dickie, Aaron, Aaron, Schimberg & Hess, Jerald Paul Esrick, Wildman, Harrold, Allen & Dixon, Joan M. Hall, Jenner & Block, Chicago, Ill., William E. Jackson, Milbank, Tweed, Hadley & McCloy, New York City, William R. Jentes, Kirkland & Ellis, Chicago, Ill., Lindsay A. Lovejoy, Jr., Simpson, Thacher & Bartlett, John J. Loflin, Lord, Day & Lord, New York City, John T. Loughlin, Bell, Boyd, Lloyd, Haddad & Burns, John J. McHugh, Chadwell, Kayser, Ruggles, McGee, Hastings & McKinney, William A. Montgomery, Schiff, Hardin & Waite, Earl E. Pollock, Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., Wayne J. Roper, Gibbs, Roper & Fifield, Milwaukee, Wis., Samuel Weisbard, McDermott, Will & Emery, Henry L. Mason III, Sidley & Austin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

This action was commenced on January 26, 1973. Plaintiffs have brought this action both individually and on behalf of a class of persons similarly situated; the class includes all nonmembers of three named stock exchanges who have paid or became liable to pay commissions for the purchase or sale of any securities to members of various stock exchanges during a particular four year period. The defendants are three national securities exchanges, who are named individually and as representatives of an alleged class of securities exchanges, and several brokerage houses belonging to the exchanges, who are named individually and as representatives of an alleged class of securities exchange members. Plaintiffs claim that defendants have violated Section One of the Sherman Act, and their complaint contains four separate counts. Count I makes allegations about the nature and mechanics of defendants' purported price fixing and its effects. Count II alleges that the purported price fixing is not necessary to effectuating the purposes of the 1934 Securities Exchange Act and that there has never been any regulation of commission rates by any governmental agency. Count III alleges that the price fixing exceeded the minimum extent necessary for effectuating the purposes of the 1934 Act. Count IV alleges that the fixed minimum commission rates have been applied far beyond the extent necessary to achieve the goals and regulatory aims of the 1934 Securities Exchange Act. Subject matter jurisdiction is said to arise under 28 U.S. C. § 1337.

Defendants have moved this Court to dismiss the complaint, or in the alternative, to stay all proceedings pending exercise by the SEC of its alleged primary jurisdiction under the 1934 Exchange Act as amended. Defendants' motion has been supported by several affidavits and memorandums of law, and has been

opposed by the plaintiffs through an affidavit and a memorandum in opposition.

I begin my analysis of defendants' motion to dismiss by noting that most national securities exchanges have traditionally possessed rather broad powers to promulgate rules and regulations pertaining to the administration of their ordinary affairs, Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1962). However, these powers are now limited by the Securities Exchange Act of 1934 as amended, by the rules and regulations of the SEC adopted thereunder, and by applicable state laws, 15 U.S.C. § 78f(c). Limitations on these powers include a registration requirement, 15 U.S.C. § 78e; the need for rules on the expulsion, suspension, or disciplining of a member, 15 U.S.C. § 78f(b); a requirement that exchange rules be obeyed and be just and adequate to insure fair dealing and to protect investors, 15 U.S.C. § 78f(d); and the potential intervention by the SEC in certain securities exchange rule-making, 15 U.S.C. § 78s(b).

Among these broad powers of national securities exchanges is the ability to fix minimum commission rates to be charged by members and member organizations. The fixing of minimum commission rates is also among the areas of exchange rule-making where the SEC may intervene, 15 U.S.C. § 78s(b)(4) and Kaplan v. Lehman Brothers, 371 F.2d 409 (7th Cir. 1967); incidentally, such intervention may occur when the rates affect nonmembers as well as members of any exchange, Silver, supra, 373 U.S. at 356, 83 S.Ct. 1246. SEC—prompted rule changes on commission rates are only authorized, however, when the agency determines that ". . . such changes are necessary or appropriate for the protection of investors or to insure fair dealing in securities traded in upon such exchange or to insure fair administration of such exchange . . .", 15 U.S.C. § 78s(b). The three securities exchanges who are defendants in this case all allege to have

operated within the legal limitations of their rule-making power, and have all had rules on minimum commission rates since at least 1934. The undisputed record before me at this point indicates that the various changes which have occurred since 1934 in the minimum commission rates of the three defendant exchanges have at least been closely watched, if not regulated, by the SEC.

In the present case, plaintiffs contend the minimum commission rates of the defendant exchanges violate antitrust law—even though they may have been established pursuant to the exchanges' Congressionally recognized authority and even though the rates may be subject to potential SEC regulation. Thus, as in the leading case of Silver v. New York Stock Exchange, *supra*, the Court's main concern here is how to relate the goal of eliminating restraints on competition which is embodied in the Sherman Act of 1890 as amended (15 U.S.C. § 1) with the public policy favoring self-regulation by national securities exchanges which is embodied in the Securities Exchange Act of 1934 as amended (15 U.S.C. § 78a). And as in *Silver*, this Court—if possible—should reconcile the operation of both statutory schemes with one another rather than holding one completely ousted. *Silver, supra*, 373 U.S. at 357, 83 S.Ct. 1246.

According to the defendants, such a reconciliation is impossible in this case. In their motion to dismiss, defendants have generally argued that antitrust law does not apply to the self-regulating rules of the national securities exchanges which have been Congressionally authorized and which are subject to review by the SEC. Defendants contend that the fixing of minimum commissions complained of here is within the scope of authorized exchange self-regulation; was intended by Congress to be immune from antitrust attack; has been held by other courts to be so immune; and would be improperly thwarted by a collateral antitrust attack. Defendants thus ask that the complaint be dismissed since no antitrust action may lie.

The 1934 Securities Exchange Act which recognizes the broad, self-regulatory powers of national securities exchanges, including the aforementioned traditional rule-making powers, contains no express exemption of exchange rules from the application of antitrust laws. *Silver, supra,* 373 U.S. at 357, 83 S.Ct. 1246. This is particularly significant in light of other comparable statutes which do contain express exempt provisions. U. S. v. Philadelphia National Bank, 374 U.S. 321, footnote 27 at 350, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1962). Thus, the defendants' claim that its rules regarding minimum commissions are immune from antitrust attack must be based on the Act's implied repeal of the antitrust laws. The Supreme Court in *Silver* recognized that the Securities Exchange Act did impliedly repeal antitrust law to a certain extent, though it recognized the longstanding rule that repeals by implication were not favored. *Silver, supra,* 373 U.S. at 357, 83 S.Ct. 1246. The Court in *Silver* found that ". . . repeal is to be regarded as implied only if necessary to make the Securities Exchange Act work, and even then only to the minimum extent necessary." *Silver, supra,* 373 U.S. at 357, 83 S.Ct. at 1257. Thus, the Court in *Silver* recognized that ". . . particular instances of exchange self-regulation . . . may be regarded as justified in answer to the assertion of an antitrust claim." *Silver, supra,* 373 U.S. at 361, 83 S.Ct. at 1259. The plaintiffs' complaint essentially states that the acts of self-regulation in the present case, i. e., the fixing of minimum commission rates, do not justify a repeal of the antitrust laws. Defendants' motion to dismiss does not, however, go to the question of whether the defendant exchanges' self-regulatory acts were justified; rather, it asks this Court to decide who should properly decide whether or not the acts were justified. Defendants' alternative motion to stay proceedings also addresses itself to this question of who should decide, as well as to the manner in which the question of justification should be decided.

Since the statutory scheme setting up exchange self-regulation was not sufficiently pervasive to create a total exemption from the antitrust laws, the Court in *Silver* recognized that ". . . some form of review of exchange self-policing . . . is therefore not at all incompatible with the fulfillment of the aims of the Securities Exchange Act." 373 U.S. at 359, 83 S.Ct. at 1258. The Court stated that such review could be by either administrative agency or by the courts. In *Silver,* since the defendants' actions which plaintiffs claimed violated antitrust laws were not subject to the SEC's jurisdiction, the Court held that the plaintiffs' claim was recognizable in an antitrust court. Yet the Court said: "Should review of exchange self-regulation be provided through a vehicle other than the antitrust laws, a different case as to antitrust exemption would be presented." *Silver, supra,* 373 U.S. at 360, 83 S.Ct. at 1258. Because the SEC allegedly has the power to review minimum commission rates under 15 U.S.C. § 78s(b)(9) and their antitrust effects, the defendants argue that there is no jurisdiction in the antitrust court to review the rates for alleged antitrust violations.

■■ It seems clear that the SEC has the power to review minimum commission rates under 15 U.S.C. § 78s(b)(9). Gordon v. New York Stock Exchange, Inc., 366 F.Supp. 1261 (S.D. N.Y.1973), affirmed 498 F.2d 1303 (2nd Cir. 1974); Kaplan v. Lehman Brothers, 250 F.Supp. 562 (N.D.Ill.1966), affirmed 371 F.2d 411 (7th Cir. 1967). It also seems clear that the SEC has the power to consider antitrust matters when reviewing exchange self-regulatory rules and policies, including those relating to minimum commission rates. Thill Securities Corp. v. New York Stock Exchange, 433 F.2d 264, at 271 (7th Cir. 1970); The Rules of the New York Stock Exchange, 10 SEC 270 (1941); Eisen v. Carlisle and Jacquelin, 54 F.R. D. 565, at 572 (S.D.N.Y.1972). The provision that national securities exchange rules must be "just and adequate to in-

sure fair dealing," 15 U.S.C. § 78f(d) seems quite similar to provisions limiting rules to those which serve the "public interest," Gulf States Utilities Co. v. F. P. C., 411 U.S. 747, at 757–758, 93 S.Ct. 1870, 36 L.Ed.2d 635 (1972) or those which are not "detrimental to the commerce of the United States . . . or is unjustly discriminating or unfair," Latin America/Pacific Coast Steamship Conference v. Federal Maritime Commission, 150 U.S.App.D.C. 362, 465 F.2d 542 at 554 and 558 (1972), cert. den. 409 U.S. 967, 93 S.Ct. 269, 34 L. Ed.2d 234. Finally, it seems clear that the SEC considered antitrust matters in this case when it at least allowed the defendant exchanges' minimum commission rates to function over the past 4–6 years. See the affidavits of Calvin, Crawford, Weithers and Rotberg.

In light of the foregoing, the central issue in the case at hand becomes this: Does SEC supervision, or at least the potential for SEC supervision, of minimum commission rates—including the consideration of relevant antitrust matters—mean that antitrust courts have absolutely no jurisdiction to entertain suits concerning these rates under the antitrust acts? In answering this question, I am aware of this Court's possible jurisdiction over the minimum rate structure under the Administrative Procedure Act and under 15 U.S.C. § 78y, *Gordon, supra,* 498 F.2d 1303; *Thill Securities Corp., supra,* 433 F.2d at 277.

The Second Circuit Court of Appeals has held that under these conditions, there can be no antitrust suits. The federal district court in *Gordon* held:

> "Without venturing to describe the full contours of this immunity, we believe that the Exchange Act, as construed by *Silver,* left the power to fix commission rates within the exclusive jurisdiction of the Exchange, subject to commission supervision." 366 F. Supp. at 1264.

In affirming, the Court of Appeals stated:

> ". . . we do not intend to imply that withdrawal of antitrust jurisdic-

tion is based on the SEC's 'primary' jurisdiction over the practices challenged . . . [a]s our earlier discussion of the language and history of the 1934 Act indicates, we are of the view that Congress intended to exempt commission rate-fixing from the operation of the antitrust laws, and consequently deprived the courts of even 'secondary' jurisdiction to entertain Sherman Act claims . . ." 498 F.2d at 1309.

I must respectfully disagree with these holdings, for I believe the antitrust courts have some jurisdiction over matters subject to SEC authority under 15 U.S.C. § 78s(b).

The Supreme Court in *Silver* strongly hinted, if not held, that such antitrust court jurisdiction exists. Because there was no authorization for the SEC to act under the facts in *Silver,* the Court said: "Thus there is also no need for us to define further whether the interposing of a substantive justification in an antitrust suit brought to challenge a particular enforcement of the rules on its merits is to be governed by a standard of arbitrariness, good faith, reasonableness, or some other measure. It will be time enough to deal with that problem if and when the occasion arises." *Silver, supra,* 373 U.S. at 366, 83 S.Ct. at 1261. This language indicates to me that the Supreme Court felt that where the authorization to act exists, jurisdiction in the antitrust courts will lie at some point—whatever the standard of deference of the Courts to the SEC will be. The Court in *Silver* also said, after finding lack of SEC authority to act: "This aspect of the statute . . . obviates any need to consider whether petitioners were required to resort to the Commission for relief *before coming into court.*" *Silver, supra,* 373 U.S. at 358, 83 S.Ct. at 1257. Again, the jurisdiction of the antitrust court is not questioned. Finally, Justice Stewart stated the following in *Silver:* ". . . I believe it must be held that the Securities Exchange Act removes antitrust liability for any action taken in good faith to effectuate an exchange's statutory

duty of self-regulation." *Silver, supra,* 373 U.S. at 371, 83 S.Ct. at 1264. Justice Stewart's remarks indicating a lack of antitrust court jurisdiction were made in a *dissenting opinion.*

Besides this implicit rejection of the *Gordon* decision in *Silver,* several other Circuit Courts of Appeal have expressly rejected the Second Circuit's view on the jurisdictional issue. The Seventh Circuit Court of Appeals held in *Thill, supra,* as follows: ". . . even the fact that the SEC may be exercising its proper supervisory power over the rules of the Exchange does not in and of itself cloak the Exchange with antitrust immunity for its conduct relating to those rules." *Thill, supra,* 433 F.2d at 271. In his very distinguished concurring opinion in *Thill,* Chief Judge Swygert said: "I further concur . . . that SEC supervision under section 19(b) is insufficient to place exclusive jurisdiction over exchange rules in the SEC. In reaching this conclusion I would reject defendant's argument that the absence of discussion of the anticompetitive aspects of exchange rules in the legislative history of the 1934 Act constitutes implied repeal of the antitrust laws for rules within the domain of exchange self-regulation." *Thill, supra,* 433 F.2d at 276. At least one other Circuit Court has followed the decision in *Thill* on the jurisdictional issue. Harwell v. Growth Programs, Inc., 451 F.2d 240 (5th Cir. 1971), rehearing den. 459 F.2d 461 (5th Cir. 1972). And the *Thill* decision has been followed by at least one court in this very same district. Zuckerman v. Yount, 362 F.Supp. 858 (N.D.Ill.1973). Incidentally, the Second Circuit Court of Appeals was fully aware of the inconsistency between its decision in *Gordon* and the *Thill* case. *Gordon, supra,* 498 F.2d 1303.

Contrary to the decisions in the *Gordon* case, I do not find that Congress intended to exempt commission rate-fixing from antitrust attack. Repeals by implication, as noted earlier, are strongly disfavored. I find many many statutory provisions which have express exemption provisions. See the Shipping Act, 46 U.S.C. § 814; the Webb-Pomerene Act, 15 U.S.C. § 62; the Clayton Act, 15 U.S.C. § 18, the Federal Communications Act, 47 U.S.C. §§ 221(a) and 222 (c)(1); the Federal Aviation Act, 49 U.S.C. § 1384; and the Interstate Commerce Act, 49 U.S.C. §§ 5 (para. 11), 5b(9) and 22. Even certain SEC transactions are expressly immunized from antitrust attack. 15 U.S.C. §§ 18 and 79j. "If Congress had desired to grant any further immunity (to SEC transactions), Congress doubtless would have said so." U. S. v. Borden Co., 308 U.S. 188, at 201, 60 S.Ct. 182, 84 L.Ed. 181 (1939). Numerous Court decisions have recognized the difference between an express exemption and an alleged implied exemption. U. S. v. Philadelphia National Bank, *supra*; Pan American World Airways v. U. S., 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1962); California v. Federal Power Commission, 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (1961); Ricci v. Chicago Mercantile Exchange, 447 F.2d 713 (7th Cir. 1971), affirmed 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1972); Hughes Tool Co. v. Trans World Airlines, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1972).

In its decision, the Second Circuit in *Gordon* found the legislative intent behind 15 U.S.C. § 78s(b)(9) was to permit the SEC to fix commission rates, even though price-fixing had earlier been found to be a per se violation of the Sherman Act. Such intent was said to show Congressional ". . . judgment of the Commission's competence to assume the central role in assuring investor protection and exchange fair dealing." *Gordon, supra,* 498 F.2d at 1307. Immediately thereafter the Court held that exemption from the antitrust laws with regard to the fixing of minimum rates is mandated by the language and legislative history of the 1934 Act. I do not agree that exemption is mandated by statutory language which does not appear; there is no express exemption. Furthermore, I do not agree that a legislative history which shows the SEC

was expected to play a "central role" mandates that the antitrust court plays absolutely no role. The Court's cursory rejection of any "secondary" jurisdiction in the antitrust court seems wrong when it finds only a legislative history of a "central role" rather than of an exemption or immunity. There is a central role to be played by either the Secretary of Agriculture, the Commodity Exchange Commission, or the Federal Power Commission in similar settings, and there the antitrust court does not lose all jurisdiction. *Ricci, supra,* 409 U.S. at 307, 93 S.Ct. 573; Gulf States Utilities Co. v. FPC, *supra.* Some form of antitrust court jurisdiction would also, in my opinion, not adversely affect the sound policy considerations governing regulation of the securities industry.

The cases of *Hughes Tool Co., supra,* and *Pan American World Airways, supra,* are not contrary to my decision today. Defendants cite these two cases in support of their contention that the Sherman Act has been impliedly repealed by 15 U.S.C. § 78s(b)(9). See Memo in Support of Defendants' Motion to Dismiss at p. 17. Yet in both cases, § 414 of the Federal Aviation Act was involved, and it *expressly* relieved persons from the operations of the antitrust acts when these persons were affected by certain regulatory decisions. Here, there is no such express statutory relief when regulatory decisions or inaction occur under 15 U.S.C. § 78s(b)(9).

Having determined there is no express or implied repeal of antitrust law as it relates to matters under the SEC's authority in 15 U.S.C. § 78s(b)(9), the question for this Court then becomes centered around the precise nature of this Court's jurisdiction in the present case. Chief Judge Swygert's concurring opinion in *Thill, supra,* 433 F.2d at 275–277, provides a useful guideline for the resolution of this question.

■ After considering the factors of agency jurisdiction and expertise set out by Chief Judge Swygert, together with the Appellate Court's opinions in *Ricci,*

*supra,* which relied on these same factors, I find the present case is the type of dispute which is appropriate for the invocation of the doctrine of primary jurisdiction. As mentioned earlier, the SEC is empowered to consider, and has in this case considered, antitrust laws and policy in fulfilling its duty of review of exchange self-regulation under 15 U.S.C. § 78s(b)(9). As mentioned earlier, an aggrieved party may be able to initiate SEC review of exchange rules under either the provisions of the Securities Exchange Act or the Administrative Procedure Act. 15 U.S.C. § 78y; 5 U.S.C. §§ 702 and 704. Finally, I feel SEC consideration of minimum commission rates is not only mandated by statute, 15 U.S.C. § 78s(b)(9), but would also be of great help to this antitrust court ". . . in arriving at the essential accommodation between the antitrust and the regulatory regimes." *Ricci, supra,* 409 U.S. at 307, 93 S.Ct. at 583.

■ However, the doctrine of primary jurisdiction is not applicable here. "That doctrine requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." U. S. v. Philadelphia National Bank, *supra,* 374 U.S. at 353, 83 S.Ct. 1715, at 1736. Here, it appears from the record, as I noted earlier, that since 1934 the minimum commission rates of the three defendant exchanges have at least been closely watched, if not in fact regulated, by the SEC. It would be an anomaly to direct the plaintiffs here to the SEC when the agency has sanctioned by its own action or inaction the alleged violation of the antitrust law. If I were to remand this case to the SEC, I would be requiring the plaintiffs to seek from the regulators an admission of their failure to properly regulate. *Ricci, supra,* J. Douglas dissenting, 409 U.S. at 309, 93 S.Ct. 573. I believe I am now in a position ". . . to make a more intelligent and sensitive judgment as to whether the antitrust laws will punish what an apparently valid rule of the Ex-

change permits." *Ricci, supra,* 409 U.S. at 308, 93 S.Ct. at 583. Thus, defendants' alternative motion to stay these proceedings must be denied.

■ The standard traditionally employed for determining the legality of conduct under the Sherman Antitrust Act is the so-called "rule of reason". See Blalock v. Ladies Professional Golf Association, 359 F.Supp. 1260, at 1263 (N.D.Ga.1973) and cases cited therein. However, reasonable rules which fulfill the need for exchange regulation may be within an implied exception to antitrust statutes. *Silver, supra.* Thus, the "rule of reason" test, as defined for example by Justice Brandeis in Chicago Board of Trade v. U. S., 246 U.S. 231, at 238, 38 S.Ct. 242, 62 L.Ed. 683 (1918) does not apply in this antitrust case because a rule which destroys certain competition may be legal under *Silver.* Rather, my obligation in this case is to determine if the minimum commission rates complained of are necessary to make the Securities Exchange Act of 1934 work, and to determine if these rates are being applied to the minimum extent necessary. *Silver, supra,* 373 U.S. at 357, 83 S.Ct. 1246. This question of implied repeal is ultimately one for this Court, though prior SEC deliberations are of essential assistance. *Ricci, supra,* 409 U.S. at 307 and 315, 93 S.Ct. 573; *Zuckerman, supra,* 362 F.Supp. at 863; *Thill, supra,* 433 F.2d at 273.

■ In deciding this question of implied repeal, some deference must be given to the SEC's apparent finding that the commission rates in issue are not so anticompetitive as to make them improper. However, it appears such deference may differ from that usually accorded agency findings—for example under 5 U.S.C. § 706. I cannot allow the SEC to bootstrap itself into an area in which it has no jurisdiction by repeatedly violating its statutory mandate. FMC v. Seatrain Lines, Inc., 411 U.S. 726, at 745, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1972). And it appears that the defendants in this case, rather than the plaintiffs, carry a certain degree of the burden of proof even though the SEC action has favored the defendants. The Seventh Circuit said in *Thill, supra*: ". . . before a court may abdicate its jurisdiction on the antitrust issue the defendant must establish its anticompetitive conduct as justified because it is necessary for the operation of the Securities Act." 433 F.2d at 273. Suggested justifications may be measured by a standard of arbitrariness, good faith, reasonableness, or something else. *Silver, supra,* 373 U.S. at 366, 83 S.Ct. 1246.

For the preceding reasons, defendants motion to dismiss, or in the alternative to stay the action, must be denied.

It is hereby so ordered and decreed.