KANSAS POWER AND LIGHT COMPANY et al., Petitioners,

v.

FEDERAL POWER COMMISSION, Respondent.

No. 75–2080.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 22, 1976.

Decided April 7, 1977.

Richard A. Solomon, Washington, D. C., with whom Robert D. Hadl, Washington, D. C., was on the brief for petitioners.

Douglas F. John, Atty., F. P. C., Washington, D. C., of the bar of the Supreme Court of Texas, pro hac vice by special leave of court, for respondent. Drexel D. Journey, Gen. Counsel, F. P. C., Robert W. Perdue, Deputy Gen. Counsel, Allan Abbot Tuttle, Sol. and Allan M. Garten, Attys., F. P. C., Washington, D. C., were on the brief for respondent.

Wallace Edward Brand, Washington, D. C., filed a brief on behalf of Sunflower Electric Cooperative, Inc., et al., as amici curiae urging affirmance.

Before WRIGHT, McGOWAN and Mac-KINNON, Circuit Judges.

Opinion for the Court filed by Circuit Judge McGOWAN.

McGOWAN, Circuit Judge:

The issue presented by this petition for review is whether the Federal Power Commission acted correctly in deferring consideration of a statutory merger application under the Federal Power Act, pending final resolution of an antitrust suit seeking to block the merger, filed by a private party in a federal district court. The Commission concluded that postponement of its proceed-ings was compelled by the Supreme Court's decision in *California v. FPC,* 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962), which held that the processing of a merger application under the Natural Gas Act should have been suspended while a Government-initiated antitrust suit challenging the merger was pending in a district court.

For the reasons set forth below, we find that *California* does not control the course of action to be followed by the Commission in the context of a merger application under the Federal Power Act. Accordingly, we vacate the orders of the Commission suspending proceedings on petitioners' application.

I

Petitioners Kansas Power and Light Company ("KPL") and Central Kansas Power Company, Inc. ("CKP") are both electric and gas utility companies operating wholly within the State of Kansas. On January 23, 1975, KPL, CKP, and United Telecommunications, Inc. ("United"), the parent company of CKP, signed an agreement providing for the merger of CKP into KPL. Under the terms of the agreement, which was made conditional upon receipt of any necessary approvals from government regulatory authorities, United would receive cash and preferred stock from KPL in exchange for its shares of the stock of CKP. Although KPL would be the sole surviving company, petitioners have represented that, at least initially, the gas and electrical properties formerly operated by CKP would be maintained and operated as a separate division or department within KPL.

On March 28, 1975, Sunflower Electric Cooperative, Inc. ("Sunflower"), a wholesale customer of CKP, brought suit against KPL, CKP, and United in the United States District Court for the District of Kansas, claiming that the proposed merger would violate section 7 of the Clayton Act, 15 U.S.C. § 18, and section 2 of the Sherman Act, 15 U.S.C. § 2, and resulted from a conspiracy in violation of section 1 of the Sherman Act, 15 U.S.C. § 1. Sunflower's

complaint requested a permanent injunction, pursuant to 15 U.S.C. § 26, against consummation of the merger.[1] The utility companies responded on June 2, 1975 by filing motions to dismiss Sunflower's complaint, arguing, *inter alia,* that exclusive, or at least primary, jurisdiction over the merger rests with the Federal Power Commission, and that the challenges to the validity of the merger should therefore either be dismissed or referred to the Commission for initial consideration.[2]

On June 11, 1975, in order to satisfy the condition in the merger agreement, KPL and CKP submitted an application to the Commission seeking approval of their merger under section 203 of the Federal Power Act, 16 U.S.C. § 824b. That section provides that no public utility shall directly or indirectly merge or consolidate its facilities with those of any other person, transfer its assets to another company, or acquire the securities of any other public utility, "without first having secured an order of the Commission authorizing it to do so." The section further provides that, "[a]fter notice

and opportunity for hearing, if the Commission finds that the proposed [transaction] will be consistent with the public interest, it shall approve the same." [3]

On the same day that KPL and CKP submitted their application under the Federal Power Act, the Commission received a letter dated June 9, 1975 from Sunflower's counsel, informing the Commission about the pending antitrust action and, on the basis of the Supreme Court's action in *California,* requesting the Commission to defer consideration of the merger application until after a decision on the merits in the antitrust suit. Sunflower also urged *California* upon the District Court, in response to the antitrust defendants' motion to dismiss on grounds of exclusive or primary jurisdiction. Furthermore, on August 18, 1975, Sunflower moved the District Court for a preliminary injunction against the merger. Petitioners and the other defendants in the antitrust suit argued that the motion for a preliminary injunction was premature, in that the merger could not be consummated without FPC approval, and

---

1. The complaint also named the Central Telephone & Utilities Corporation as a defendant, and sought injunctive relief against all mergers which would involve any two of the defendants. In addition, the complaint charged that prior to the merger agreement among KPL, CKP, and United, the four defendants had engaged in continuing combinations and conspiracies to restrain and monopolize interstate trade in the power exchange and bulk electric power markets, in violation of sections 1 and 2 of the Sherman Act. To remedy these latter violations, the complaint requested treble damages and various forms of injunctive relief, including the "wheeling" of power over the defendants' transmission facilities and compulsory coordinated development of large-scale generating units.

2. The motions also assert that (1) Sunflower does not have standing to sue, (2) the complaint fails to state a claim upon which relief can be granted, and (3) the claimed Sherman Act violations involve state action immune from prosecution under the federal antitrust laws.

3. Section 203 states in full:
   (a) No public utility shall sell, lease, or otherwise dispose of the whole of its facilities subject to the jurisdiction of the Commission, or any part thereof of a value in excess of $50,000, or by any means whatsoever, direct-

ly or indirectly, merge or consolidate such facilities or any part thereof with those of any other person, or purchase, acquire, or take any security of any other public utility, without first having secured an order of the Commission authorizing it to do so. Upon application for such approval the Commission shall give reasonable notice in writing to the Governor and State commission of each of the States in which the physical property affected, or any part thereof, is situated, and to such other persons as it may deem advisable. After notice and opportunity for hearing, if the Commission finds that the proposed disposition, consolidation, acquisition, or control will be consistent with the public interest, it shall approve the same.
   (b) The Commission may grant any application for an order under this section in whole or in part and upon such terms and conditions as it finds necessary or appropriate to secure the maintenance of adequate service and the coordination in the public interest of facilities subject to the jurisdiction of the Commission. The Commission may from time to time for good cause shown make such orders supplemental to any order made under this section as it may find necessary or appropriate.
   16 U.S.C. § 824b (1970).

that it was unlikely that approval would occur prior to a Commission hearing on the matter.

With the countervailing motions of the parties still pending before the District Court, the Commission, without prior notice or hearing, issued an order on September 2, 1975, deferring any action on the merger application until after the District Court renders a final decision in the antitrust proceeding. The order makes clear that the Commission's decision to suspend proceedings followed directly and solely from its understanding of *California*. First, the Commission read *California* as establishing the broad proposition that the FPC "should not proceed to a decision on the merits of a merger application when there is pending in the courts a suit challenging the validity of that transaction under the antitrust laws." Second, the Commission recited, almost verbatim, the "practical reasons" given by the Court to support its holding in *California*, see 369 U.S. at 488–89, 82 S.Ct. 901; *id.* at 494, 82 S.Ct. 901 (Harlan, J., dissenting), and offered them as an explanation for deferring to the District Court in the instant case:

> The practical reasons why the Commission should await a court decision are as follows: (1) if the Commission approves the transaction and the courts in the antitrust suit later hold it to be illegal, an unscrambling is necessary; (2) these unscrambling processes often raise complicated and perplexing problems on tax matters and otherwise; and (3) a transaction consummated under the aegis of the Commission as being a matter of "Public Convenience and Necessity" is bound to carry momentum into the antitrust suit.

In light of the Commission's order, the District Court decided to postpone any action on Sunflower's request for a preliminary injunction "at least until the pending motions to dismiss filed by defendants have been ruled on." At oral argument, we were informed that the District Court has not yet passed upon either the motions to dismiss or the motion for a preliminary injunction, nor does it seem likely that it would do so pending the disposition of this appeal.

On September 26, 1975, counsel for KPL and CKP filed with the Commission a petition for rehearing or reconsideration of the Commission's September 2 order, asserting that *California* neither requires nor suggests that the Commission should defer all proceedings under section 203 of the Federal Power Act pending resolution of the antitrust action; that there are no viable policy reasons for deferring consideration of the merger; and that the valid interests of all parties would be served if the Commission were to proceed to final decision on the merger application. The Commission denied this petition for rehearing by an order issued October 24, 1975, and reaffirmed the position taken in its earlier order. The Commission found that, notwithstanding petitioners' contentions, *California* "is still controlling" and "dictates our course of action."

█ KPL and CKP then brought the instant petition in this court, pursuant to section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b), seeking review of the Commission's order of September 2, 1975, as well as the order of October 24, 1975 denying rehearing or reconsideration.[4] Sun-

---

4. We requested the parties to submit memoranda addressed to the question of whether the Commission's actions, although labelled "orders" by the Commission, are reviewable "orders" within the meaning of section 313(b) of the Federal Power Act. That section provides in relevant part:

> Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States Court of Appeals for any circuit wherein the licensee or public utility to which the order relates is

located, or has its principal place of business, or in the United States Court of Appeals for the District of Columbia Circuit, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part.

16 U.S.C. § 825*l*(b) (1970). Petitioners and the respondent Commission both assert that the orders sought to be reviewed come within the terms of section 313(b). *Amicus* Sunflower disagrees, arguing that under the facts of this

flower was granted leave to file a brief as *amicus curiae,* on its own behalf and that of several interested cities located in Kansas.

## II

■ Petitioners and the Commission apparently agree that the only issue before us is whether *California* requires the Commission to defer consideration of petitioners' merger application. Whether the Commission has exclusive or primary jurisdiction over the merger is a matter to be decided in the first instance by the District Court in Kansas, since those doctrines relate to the court's obligation to defer to the agency, and a determination of their applicability is not necessary to the decision of whether the agency must defer to the court. *See Ashland Oil & Refining Co. v. FPC,* 421 F.2d 17, 19–20 (6th Cir. 1970). If the Commission has even concurrent jurisdiction, the orders in this case cannot stand.[5]

We turn therefore to an examination of the Supreme Court's decision in *California.*

In that case, El Paso Natural Gas Company acquired the stock of Pacific Northwest Pipeline Corp., and on July 22, 1957, the Justice Department filed suit in the district court seeking to enjoin this *stock* acquisition as a violation of § 7 of the Clayton Act. On August 7, 1957, El Paso applied to the Federal Power Commission pursuant to § 7(c) of the Natural Gas Act, 15 U.S.C. § 717f(c), for authority to acquire Pacific Northwest's *assets* and merge them with its own.[6] The Department of Justice asked the Commission to stay its proceedings pending the outcome of the antitrust suit, but the Commission refused this request and began hearings in September 1958 on the asset acquisition application.

Subsequently, the Justice Department renewed its request, and the Commission agreed to postpone its hearings to a date that would not conflict with the date then scheduled for trial of the antitrust case. But the District Court decided to continue the antitrust suit until the administrative proceedings had been completed, and the

case only the District Court in Kansas has jurisdiction to review the Commission's actions. After considering the submissions of the parties, we have concluded that whether the petitioners are deemed to be challenging agency action "unlawfully withheld" within the meaning of 5 U.S.C. § 706(1), *see, e. g., Environmental Defense Fund, Inc. v. Hardin,* 138 U.S.App.D.C. 391, 396–397, 428 F.2d 1093, 1098–99 (1970), or an agency determination that it lacks jurisdiction over a particular matter, *see, e. g., Conway Corporation v. FPC,* 167 U.S.App.D.C. 43, 46–47, 510 F.2d 1264, 1267–68 (1975), *aff'd,* 426 U.S. 271, 96 S.Ct. 1999, 48 L.Ed.2d 626 (1976), the orders deferring consideration of the merger application have the requisite "definitive character" to be reviewable at this time, *see FPC v. Metropolitan Edison Co.,* 304 U.S. 375, 384, 58 S.Ct. 963, 82 L.Ed. 1408 (1938); and since review is possible on the basis of the administrative record, jurisdiction properly lies in an appropriate court of appeals under section 313(b), *see Investment Company Institute v. Board of Governors,* 179 U.S.App. D.C. 311, at 316–319, 551 F.2d 1270, at 1275–78 (1977).

5. Sunflower apparently has argued in the District Court that the District Court and the Commission have "concurrent" jurisdiction over the merger, but that the *California* decision *compels* the Commission to defer to the Court. We use the term "concurrent jurisdiction" to mean a situation in which the Commission and the Court are each free to go forward with their own proceedings.

In this court, Sunflower now argues that, even if *California* did not require the Commission to suspend its proceedings, the Commission's orders may be upheld as a valid exercise of discretion under a scheme of concurrent jurisdiction, as we have defined it. However, the Commission makes no such argument and, as we noted earlier, *see* pp. ——·——— of 180 U.S.App.D.C., p. 1181 of 554 F.2d *supra,* the orders themselves make clear that the Commission's position derived solely from its understanding that it was required by *California,* as a matter of law, to defer to the District Court.

6. Section 7(c) of the Natural Gas Act provides in relevant part:

(c) No natural-gas company or person which will be a natural-gas company upon completion of any proposed construction or extension shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, or undertake the construction or extension of any facilities therefor, or acquire or operate any such facilities or extension thereof, unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations . . . .

15 U.S.C. § 717f(c) (1970).

Commission therefore resumed its hearings, at the end of which it gave its approval of the asset acquisition. The Commission construed § 7 of the Natural Gas Act, together with § 7 of the Clayton Act, as giving the Commission the power to exempt from the antitrust laws transactions consummated pursuant to Commission authority, and the order of approval therefore purported to immunize the asset acquisition from further attack. The Commission recognized its responsibility to take into account antitrust policies in deciding whether the transaction would further the "public convenience and necessity," but concluded that, with regard to El Paso's application, "any lessening of competition is not substantial." *See* 369 U.S. at 487–88, 82 S.Ct. at 905.

On review of the Commission's order approving the asset acquisition, the Supreme Court reversed, holding that the Commission should not have proceeded to a decision on the merits of El Paso's application while a suit challenging the validity under the antitrust laws of the prior stock acquisition was pending in the courts. *Id.* at 487, 82 S.Ct. 901. The Court read section 7 of the Natural Gas Act as conferring jurisdiction only over *asset* acquisitions—and not over *stock* acquisitions—of natural gas companies, and concluded that to permit the Commission to go forward under section 7 while a suit against the stock acquisition was pending would allow the Commission in effect to rule on matters over which it has no jurisdiction:

> Section 7 of the Clayton Act, so far as material here, prohibits stock acquisitions having a prescribed effect. Section 7 of the Natural Gas Act confers jurisdiction on the Commission over the acquisition of assets of natural gas companies, not over stock acquisitions in them. Had the Commission stayed its hand and had the courts found the stock acquisition unlawful, the entire transaction would have been set aside *in limine.* Had the courts found the stock acquisition lawful, presumably no problems under § 7 of the Clayton Act would have remained. When the Commission proceeds in the face of a pending but undecided antitrust

suit and approves a merger that has been preceded, as this one was, by a stock acquisition, it in substance treats the entire relation of the companies—from the acquisition of stock to the merger—as an integrated transaction. If that administrative action were approved, the Commission would be allowed to do by indirection what it has no jurisdiction to do directly.

*Id.* at 489–90, 82 S.Ct. at 906 (footnote omitted).

The Court found that the Commission does not have power under § 7 of the Natural Gas Act to immunize mergers from the reach of the antitrust laws and that the Commission had improperly undertaken to make a finding as to whether § 7 of the Clayton Act had been violated, a finding which the Court said is reserved to the courts. *See id.* at 485–86, 488, 490, 82 S.Ct. 901. And, as the Commission recognized in the orders under review in the instant case, the Court gave two sets of practical reasons for requiring the Commission to suspend its proceedings under the Natural Gas Act: first, "if the Commission approves the transaction and the courts in the antitrust suit later hold it to be illegal, an unscrambling is necessary," and complicated tax and other problems might result; and second, "a transaction consummated under the aegis of the Commission as being a matter of 'public convenience and necessity' is bound to carry momentum into the antitrust suit." *Id.* at 488–89, 82 S.Ct. at 906.

### III

In our view, there is a critical difference between the Commission's authority under § 203 of the Federal Power Act, on the one hand, and § 7 of the Natural Gas Act, on the other, that makes the *California* precedent inapposite here. Under § 203, the Commission has jurisdiction over stock acquisitions as well as asset acquisitions, and the Commission would therefore be acting wholly within the scope of its regulatory authority in passing upon the merits of petitioners' application. The Commission's

proceedings would in no way allow it, in the Supreme Court's words, "to do by indirection what it has no jurisdiction to do directly." Indeed, petitioners may not go forward with any aspect of their merger until they obtain authorization under section 203. Unlike the situation in *California* where only the antitrust court could block the entire transaction at stake, the Commission here could set aside the proposed acquisition "*in limine*" if the "public interest" so requires.[7]

■ The "practical reasons" cited by the *California* Court for deferring administrative proceedings were direct reflections of the Commission's limited jurisdiction in that case, and are not persuasive grounds for requiring the Commission to postpone consideration of petitioners' application under section 203 of the Federal Power Act. Thus, the Court's fear that Commission approval of a merger under the Natural Gas Act would "carry momentum into the antitrust suit" may be understood as an expression of the Court's conclusion that, by ruling on El Paso's asset acquisition, the Commission was in effect exercising authority over the earlier stock acquisition which was beyond its statutory jurisdiction. The Commission has, of course, an obligation under the Federal Power Act to consider antitrust policies in determining whether a merger satisfies section 203's "public interest" standard, *see Gulf States Utilities Co. v. FPC*,

411 U.S. 747, 757–60, 93 S.Ct. 1870, 36 L.Ed.2d 635 (1973); *Northern Natural Gas Co. v. FPC*, 130 U.S.App.D.C. 220, 226–228, 399 F.2d 953, 959–61 (1968), but so long as the Commission is acting within its § 203 jurisdiction, there appears to be little danger of encroachment upon the antitrust court's tasks.[8] Regardless of the Commission's disposition of this case, the District Court in Kansas is free to exercise its own judgment on the relevant antitrust issues.

Similarly, the *California* Court's concern about "unscrambling" can be explained by the fact that, given the Commission's narrow jurisdiction under the Natural Gas Act, Commission action on El Paso's asset acquisition could, on balance, only have complicated final resolution of the problems generated by the merger transaction as a whole. Commission approval of the requested asset merger could have led to a need for a broader preliminary injunction, or more extensive and complex relief in the event of ultimate success on the merits, in the Justice Department's antitrust suit. At the same time, since the Commission did not have jurisdiction over the stock acquisition, its proceedings could not possibly have blocked the entire transaction at the outset if it were in violation of applicable law, or saved the antitrust court the time and expense of considering the Government's suit.

---

**7.** Extension of the *California* holding to the case at bar would be particularly undesirable in light of the fact that a private party, rather than the Government, has brought the antitrust suit challenging the proposed merger. *See* Jaffe, *Primary Jurisdiction*, 77 Harv.L.Rev. 1037, 1067–68 (1964); *The Supreme Court, 1961 Term*, 76 Harv.L.Rev. 54, 182 (1962). Since the merger cannot be consummated without the Commission's approval, requiring the Commission to suspend its proceedings during the pendency of the antitrust action would in effect grant a private party an automatic preliminary injunction against the merger, independent of the merits of that private party's suit. As a general matter, we are loath to shift the authority and responsibility for balancing the factors affecting the desirability of preliminary relief from the antitrust court to a private party. Moreover, where a private party rather than the Justice Department has brought the antitrust suit, there can be no argu-

ment that mandatory deferral of Commission proceedings is necessary to reconcile the overlapping statutory responsibilities of two governmental agencies.

But, as Professor Jaffe has pointed out, *see* Jaffe, *supra*, the *California* decision seems to apply by its terms to antitrust suits brought by private parties as well as the Government. We are therefore content to rest our conclusion that *California* does not apply here on the ground that, in considering petitioners' application under section 203 of the Federal Power Act, the Commission will not in any way be passing on matters outside its regulatory jurisdiction.

**8.** We note that, in contrast to its action in *California*, the Commission in this case has not asserted authority to immunize petitioners' merger nor to make findings reserved exclusively to the antitrust court.

■ Inasmuch as the Commission's authority under section 203 of the Federal Power Act would allow it to block all aspects of petitioners' merger transaction if the merger were deemed not to be consistent with the "public interest,"[9] the potential for unscrambling problems is attenuated here, and accordingly does not require suspension of Commission proceedings pending resolution of the antitrust action. So long as the Commission makes any order approving petitioners' merger effective only after notice to the antitrust parties and allowance of sufficient time for the District Court to act, the Court's equitable powers should be quite ample to preserve the status quo during the litigation, if the public interest and the interests of the parties make such relief appropriate. The Court could enter a preliminary injunction against all aspects of the merger or, if a less restrictive decree were warranted, the Court might order that the CKP properties continue to be maintained and operated separately *pendente lite.*

Although the antitrust plaintiff ordinarily must show a significant probability of success on the merits and a balance of equities in favor of immediate relief in order to gain a preliminary injunction, *see, e.g., Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co.,* 476 F.2d 687, 692–93 (2d Cir. 1973), these requirements are designed to accommodate the legitimate interests of the defendants, and the public, in allowing lawful competitive behavior to continue without interference. Thus, granting what amounts to an automatic preliminary injunction to the antitrust plaintiff by requiring the Commission to postpone considera-

tion of a merger application under the Federal Power Act, upon filing of an antitrust complaint challenging the proposed merger, would not necessarily advance the policies underlying the antitrust laws. The fact that regulatory approval is necessary before a merger of electric and gas utilities can be consummated does not provide a rational basis for awarding automatic preliminary injunctions against such mergers at the behest of antitrust plaintiffs who may or may not have meritorious claims.[10]

## IV

The Supreme Court's decisions before and after *California* confirm our belief that its precedential value must be evaluated in the light of the particular statutory context in which it arose. In numerous cases involving a potential overlap between an antitrust suit and an agency's regulatory jurisdiction, rather than the agencies being required to defer to the courts, the courts have been compelled to dismiss or defer the antitrust actions pending before them in order to allow the agency to exercise exclusive or primary jurisdiction. *United States v. National Ass'n of Securities Dealers, Inc.,* 422 U.S. 694, 95 S.Ct. 2427, 45 L.Ed.2d 486 (1975); *Hughes Tool Co. v. Trans World Airlines, Inc.,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *Ricci v. Chicago Mercantile Exchange,* 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973); *Carnation Co. v. Pacific Westbound Conference,* 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966); *Pan American World Airways, Inc. v. United States,* 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963); *Far East Conference v.*

9. Commission disapproval of the merger conceivably could be based in whole or in part on a finding that the merger would be unduly anticompetitive. *See* text accompanying note 8 *supra.* Alternatively, disapproval might be grounded in public interest considerations wholly unrelated to antitrust policies.

10. Nor does the fact that a private plaintiff might not be able to obtain the remedy of divestiture, *compare, e.g., International Tel. & Tel. Corp. v. General Tel. & Tel. Elec. Corp.,* 518 F.2d 913, 920–25 (9th Cir. 1975), *with NBO Indus. Treadway Cos. v. Brunswick Corp.,* 523 F.2d 262, 278–79 (3d Cir. 1975), *rev'd on other*

grounds sub nom. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), support deferral of Commission proceedings pending resolution of the antitrust suit. Once the plaintiff has shown a probability of success on the merits, the absence of an adequate remedy might contribute to the balance of equities favoring preliminary relief, but this is a matter to be considered by the antitrust court; again, there is no ground for parlaying the statutory requirement of Commission approval into an automatic preliminary injunction against a proposed merger.

*United States,* 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952). Moreover, in *Otter Tail Power Co. v. United States,* 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973), although the Court held that the FPC did not have primary or exclusive jurisdiction pursuant to section 202 of the Federal Power Act over interconnections of electric power transmission facilities, the Commission was permitted to go forward with its proceedings concurrently with a related antitrust action in the courts. *See id.* at 376, 93 S.Ct. 1022; *id.* at 392 n. 8, 93 S.Ct. 1022 (Stewart, J., concurring in part and dissenting in part).

Respondent has not cited, and we have been unable to find, any case outside the context of the Natural Gas Act in which an agency has been compelled, as a matter of law, to suspend proceedings within its regulatory jurisdiction pending decision of an antitrust action filed in the courts.[11] Indeed, in a case under the Natural Gas Act in which it was clear that the FPC was acting within the scope of its statutory responsibilities over matters of rate regulation, the Sixth Circuit held that *California* did not require the Commission to defer action until the conclusion of a related contract suit which had been brought in a federal district court. *Ashland Oil & Refining Co. v. FPC,* 421 F.2d 17, 20–22 (6th Cir. 1970) (FPC proceeding pursuant to 15 U.S.C. § 717c).

11. In *United States v. Philadelphia National Bank,* 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963), the Supreme Court held that a suit attacking a bank merger as a violation of § 7 of the Clayton Act was not barred by the fact that the Comptroller of the Currency, acting within his authority under the Bank Merger Act, previously had given his approval to the merger. Since the Comptroller's approval occurred prior to the commencement of the antitrust suit, the Court did not reach the question of whether *California* would have required the Comptroller to stay his hand had the antitrust action been filed prior to his decision. *Id.* at 353 & n.32, 83 S.Ct. 1715.

12. If the District Court in Kansas should hold that the Commission has primary or exclusive jurisdiction in this case, and its decision is upheld on appeal, we presume that the Commission would be bound to proceed with the

**V**

The orders of the Commission deferring consideration of petitioners' merger application pending resolution of the antitrust action in the Kansas District Court are accordingly vacated, and the case is remanded to the Commission.[12] To accommodate the interests of the parties to the antitrust suit, any order of approval entered by the Commission in this case, while the antitrust action is still pending, shall be effective only upon forty days' notice to the antitrust parties.

*It is so ordered.*

hearing and disposition of petitioners' application. If, on the other hand, the District Court concludes that it has concurrent jurisdiction over this matter, and does not stay its hand in favor of the agency proceedings, nothing in our opinion should be construed to limit any discretion the Commission otherwise might have to defer its proceedings. In particular, if upon examination the Commission were to find that processing of petitioners' application would be needlessly duplicative of proceedings which will be had in the District Court in Kansas, nothing we say today would limit the Commission's authority to postpone its deliberations.

As noted earlier, *see* part II *supra,* we express no judgment on the question of whether the Commission has exclusive or primary jurisdiction in this case.