KNOLL, Judge.
This appeal reaches us prior to trial on an exception of lack of subject matter jurisdiction filed by the defendants.[1] The case concerns a class action against intrastate natural gas pipeline companies and distributors alleging Louisiana antitrust violations.[2]
The main issue on this appeal is whether Louisiana antitrust laws, LSA-R.S. 51:121, et seq., are preempted by the Public Service Commission (PSC) when the alleged antitrust violations ultimately affect gas rates.
The plaintiffs[3] are residential and commercial end users of natural gas of defen *548 dant, Trans La, a Division of Atmos Energy Corporation (Trans La), a public utility regulated by the PSC and in the business of distributing natural gas. It is alleged that the total number of plaintiffs is in excess of 60,000 end users, geographically dispersed throughout Trans La’s service area, consisting of several parishes.
The several defendants consist of regulated (by the PSC) and unregulated intrastate natural gas pipeline companies and distributors. Their customers are residential, commercial and industrial end users.
In addition to Trans La, the defendants are: Louisiana Intrastate Gas Corporation (LIG), a pipeline regulated by the PSC and in the business of transporting intrastate natural gas to Trans La; LIG Chemical company (Lig Chem), a corporation not regulated by the PSC and in the business of the sale and/or brokering of intrastate natural gas to industrial end users; Tuscaloosa Pipeline Company (Tuscaloosa), a corporation not regulated by the PSC and in the business of the transportation, sale and/or brokering of intrastate natural gas to industrial end users; and, Trans-Louisiana Industrial Gas Company, Inc. (T-Lig),[4] a corporation not regulated by the PSC, and is in the business of selling intrastate natural gas to industrial end users.
The plaintiffs allege that defendants violated Louisiana antitrust laws by conspiring among themselves to move cheap gas to industrial end users only, thereby inflating LIG’s weighted average cost of gas (WACOG)[5] and passing this inflated WA-COG through to consumers, and further, that the defendants conspired to include improper costs and exclude credits within the rate structure and the WACOG component of that rate structure.
In redress of these alleged violations, the plaintiffs seek consequential damages, treble damages under the antitrust violation provision,[6] and declaratory and injunctive relief from a 1983 contract.[7]
*549 The defendants strongly urge that only the PSC can hear this case because the result of plaintiffs’ complaints affects gas rates and only the PSC has jurisdiction to regulate rates.
In district court,[8] eventually all the defendants filed declinatory exceptions of lack of jurisdiction over the subject matter of the action, and dilatory exceptions of vagueness. Additionally, Trans La and T-Lig filed declinatory exceptions of improper venue, and dilatory exceptions of prematurity, lack of procedural capacity, and improper cumulation of actions. After vigorous arguments and extensive briefs by able counsel, the district court overruled all exceptions.
This brings us to the crux of this appeal — who has subject matter jurisdiction to hear this case, the PSC or the Fifteenth Judicial District Court, the forum where plaintiffs filed their petition?
SUBJECT MATTER JURISDICTION
In overruling the defendants’ exception of lack of subject matter jurisdiction, the learned trial court stated in its written reasons for judgment.
“This Court finds that if this was a ‘rate case’ as defendants contend, then the PSC would have exclusive jurisdiction. However, this is not a ‘rate case’ and this Court has the jurisdiction to hear it. This Court also finds that this action does not involve an appeal of the PSC’s orders or a challenge to PSC rates or regulations.
Plaintiffs allege claims on behalf of about 65,000 commercial and residential Louisiana customers of natural gas against these defendants for violations of Louisiana antitrust law and other state laws, arising out of the wrongful manipulation of charges for natural gas since 1983. Specifically, plaintiffs allege that LIG diverted cheap gas to LIG Chem and Tuscaloosa which enabled them to compete with prices, and/or facilitated their price competition, in the Louisiana Industrial gas market, where prices are not regulated by the PSC. They claim that this ‘diversion of cheap gas’ inflated LIG’s WACOG. Plaintiffs further allege that defendants also manipulated the WACOG by including improper items and excluding others, which resulted in excessive charges for natural gas passed through to the class members.
Plaintiffs also allege that the effect of the 1983 contract, the conspiracy to cause it to be entered into, its execution, its implementation, interpretation, and/or defendant’s [sic] illegal and/or wrongful manipulation of WACOG, was that defendants, LIG, LIG Chem, and Trans La, along with one or more other defendants obtained and benefited from an illegal monopoly over the pricing and supply of intrastate natural gas to be supplied by LIG to Trans La for resale to the plaintiffs and the class of customers of Trans La within the relevant market on the basis of a direct pass-through of Trans La’s costs of gas from LIG at WACOG plus $.13 Mcf.
This Court finds that plaintiff’s petition alleges statelaw antitrust violations, breach of contract, breach of fiduciary duty, treble damages, fraud and unjust enrichment. Therefore, these are antitrust and other state law claims and the PSC lacks jurisdiction over them. This Court will not allow the PSC to usurp it’s [sic] authority.
In the case of City of New Orleans vs. United Gas Pipe Line Co., 438 So.2d 264 (La.App. 4th Cir.), writ denied, 442 So.2d 463 (La.1983), the 4th Circuit would not allow the PSC to intervene in a suit by a class of rate payers, among others, against a natural gas supplier for breach of contract. City of New Orleans cites Creasman vs. Gilpin, 175 So.2d 879, 880 (La.App. 2d Cir.1965), as follows:
‘Determination of the amount an injured party is entitled to recover against the wrongdoer to repair his *550 damage is a function entrusted to the judicial branch of government.’
In South-West Utilities, Inc. vs. South Central Bell Telephone Co., 339 So.2d 425 (La.App. 1st Cir.1976), the plaintiff was a company engaged in the manufacture of office communication equipment. The plaintiffs equipment was designed to be interconnected with the telecommunications network owned and operated by the defendants, who manufactured competing equipment. Some of the defendants were utilities regulated by the PSC. The plaintiff brought an action against the telephone company under state antitrust laws, alleging, inter alia, that the telephone company manipulated its rate schedule in an anticompetitive manner. This case held that the Public Service Commission had no authority to immunize the telephone company from antitrust challenges but its power to approve rates and the doctrine of primary jurisdiction does not require the company to first seek relief before the Public Service Commission.”
After carefully researching this issue, we find the trial court correctly overruled defendants’ exception of lack of subject matter jurisdiction.
Fundamental to defendants’ argument of lack of subject matter jurisdiction in the district court is equating plaintiffs’ allegations to a complaint about rates. Defendants further argue that since plaintiffs’ allegations concern rates, only the PSC has jurisdiction to hear this case, despite the allegation of Louisiana antitrust violations. Simply stated, defendants urge that the PSC preempts Louisiana antitrust laws under these circumstances. We disagree.
The PSC is constitutionally[9] and statutorily [10] mandated to regulate gas rates of residential and commercial end users. This is not disputed. Regulating rates includes “... for the purpose of fixing and regulating the rates charged or to be charged by and service furnished by such public utilities; ...” LSA-R.S. 45:1163. Under LSA-R.S. 45:1176, the PSC has the authority to “... investigate the reasonableness and justness of all contracts, agreements and charges entered into or paid by such public utilities with or to other persons, whether affiliated with such public utilities or not, and shall have the power to disallow as an operating expense of any public utility such part of the amount so paid by it under any such contract or agreement as the commission ... may find, after hearing, to be unjust or unreasonable and designed for the purpose of concealing, abstracting or dissipating the net earnings of the public utility.” Under LSA-R.S. 45:303, the PSC is “to remove the prejudicial effect” of pricing in the industrial market.
We recognize that the PSC has been statutorily granted broad powers in discharging its duty in regulating rates. However, as exhibited in South-West Utilities v. S. Cent. Bell Tel., 339 So.2d 425 (La.App. 1st Cir.1976), the broad powers of the PSC do not preempt Louisiana antitrust laws although rates may be affected. To the contrary, Louisiana, as well as courts of other jurisdictions, jealously guard its forums to determine antitrust violations. See South-West Utilities, supra; Otter Tail Power Company v. United States, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973); California v. Federal Power Commission, 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962); Lowell Gas Co. v. Attorney General, 377 Mass. 37, 385 N.E.2d 240 (1979); Mazzola v. Southern New England Telephone Co., 169 Conn. 344, 363 A.2d 170 (1975).
As we perceive plaintiffs’ allegations, this is not a rate case. We are mindful that at this preliminary stage of the proceedings, there is no evidence of record to support their allegations because this issue came up on an exception prior to trial on the merits; therefore, we are only examining allegations. However, we are satisfied that their allegations sufficiently raise antitrust violations in restraint of trade and/or price fixing. The proper forum to determine antitrust allegations is a *551 Louisiana court. South-West Utilities, supra. As stated in South-West Utilities, if it should later develop that this is merely a rate case, then the learned trial court can defer this entire matter to the PSC for a proper rate determination.
Defendants argue that plaintiffs could have gone before the PSC under the same allegations in alleged discriminatory pricing by defendants, and if we affirm the trial court, then it will open a floodgate of litigation. This argument is not convincing. The PSC is without jurisdiction to determine antitrust matters and to grant the relief plaintiffs seek if the allegations are proven.
Alternatively, defendants argue the doctrine of primary jurisdiction. SouthWest Utilities, supra, contains an excellent discussion on this doctrine. Under this doctrine, the court can defer this matter to the PSC. Basically, the courts have employed the doctrine of primary jurisdiction where there is a need for uniformity in various areas of a regulated industry, particularly in the area of rates, and, for “special administrative expertise” attributed to the agencies due to their intimate working . associations with the industries they regulate. Id. We find that since the issues before the court concern allegations of antitrust violations, the trial court possesses the expertise to examine Louisiana law on these issues and make its determination. Further, the PSC lacks the jurisdiction to grant the relief the plaintiffs seek should they prove their case. We do not find a need at this preliminary stage of the proceedings to invoke the doctrine of primary jurisdiction.
DILATORY AND DECLINATORY EXCEPTIONS
In addition to the declinatory exception of lack of subject matter jurisdiction, defendants also raised a dilatory exception of vagueness. Defendants contend that the petition neither contains a short, clear, and concise statement of the causes of action nor alleges the facts constituting fraud with any particularity or specificity.
After carefully reviewing the record, we find that the learned trial court properly denied this exception, and we adopt and incorporate its written reasons herein:
“Defendants allege that the plaintiffs’ petition does not comply with the Louisiana Civil Code of Procedure Articles 856 and 891 because it is vague and does not describe with particularity the allegations of fraudulent activity by the defendants.
La.C.C.P. Art. 891 reads in pertinent part as follows:
‘The petition shall contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation.’
La.C.C.P. Art. 856 reads in pertinent part as follows:
‘In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity-’
Defendants contend that the petition does not allege any facts which show that the defendants misrepresented or suppressed material information relied upon by plaintiffs which would show fraud.
This Court finds that the plaintiffs’ petition does satisfy La.C.C.P. Art. 891 in that it contains ‘a short, clear, and concise statement of the object of the demand and of the material facts upon which the cause of action is based.’ Additionally, the petition complies with La. C.C.P. Art. 856 in that it alleges with sufficient particularity the circumstances constituting fraud. Plaintiffs contend that the material information which defendants are alleged to have misrepresented and/or suppressed is set forth in, among others, Paragraph 35 of the petition. The Court agrees with this contention and find[s] that the plaintiffs describe in detail the conduct alleged to constitute fraud.”
Trans La and T-Lig also filed a dilatory exception of improper cumulation *552 of actions. They contend that the plaintiffs’ petition improperly cumulates a contract action and an antitrust action.
The learned trial court analyzed the argument of Trans La and T-Lig as follows:
“Defendants, Trans La and Industrial contend that the plaintiffs have improperly cumulated an alleged contract action and an action for fraud with an antitrust action because they involve different forms of procedure.
La.C.C.P. Art. 462 provides as follows:
‘A plaintiff may cumulate against the same defendant two or more actions even though based on different grounds, if:
(1) Each of the actions cumulated is within the jurisdiction of the Court and is brought in the proper venue; and
(2) all of the actions cumulated are mutually consistent and employ the same form of procedure.
Except as otherwise provided in Article 3657, inconsistent or mutually exclusive actions may be cumulated in the same judicial demand if pleaded in the alternative.’
Defendants specifically contend that La. R.S. 51:134 and 135 provide that the procedure for trial and appeal of exceptions and other interlocutory judgments in actions brought under the state antitrust laws, La.R.S. 51:121, et seq., are sui gen-eris and are to be conducted on an expedited basis. They cite the example that all interlocutory judgments and rulings on exceptions become res judicata unless the party cast shall appeal within five (5) days.
In the case of Abadie vs. Cassidy, 581 So.2d 657 (La.1991), the Supreme Court reversed the Court of Appeal which had affirmed the trial court’s holding that plaintiff's claims of damages and injunc-tive relief cannot be cumulated. The case, People of the Living God v. Chantilly Corp., 211 So.2d 445 (La.App. 4th Cir.1968), the case relied upon by the Court of Appeal, has been called a ‘casebook example of how not to decide a cumulation problem.’ Tate, Work of the Appellate Courts — 1968-1969, 30 La. L.Rev. 286, 287 (1969). Judge Tate stated as follows in explaining the error of the Chantilly court:
‘In holding the cumulation improper, the court pointed out that a jury trial was available for the damage action, but not for the injunction action (no one had sought trial by jury), as well as certain differences in the treatment of appeals, such as that a permanent injunction may not be appealed suspen-sively as of right, while the damage action may. Citing a pre-1960 decision, the court concluded that the two actions could not be cumulated “ ‘because of the complications that would result.’ ” The Court’s refusal to permit cumulation because of these (exaggerated) procedural difficulties ignores the Code criteria authorizing cumulation of two or more actions against the same defendant. The Court should not have refused cumulation when the Code requirements were met.’ Tate, Work of the Appellate Courts — 1968-1969, supra.
Accordingly, we find that the actions in the present case employ the same form of procedure and are not improperly cu-mulated only because there is a different treatment of appeals. The fact that the antitrust action has an expedited appeal procedure does not change the status of an ordinary proceeding to a summary proceeding. An antitrust action is an ordinary proceeding, and this Court finds that the action is property [sic] cumulat-ed with the plaintiffs’ other state law actions.”
For the reasons assigned by the trial court, we find that this dilatory exception was also properly denied.
In the trial court, Trans La and T-Lig also raised dilatory exceptions of prematurity and lack of procedural capacity. The dilatory exceptions of prematurity and lack of procedural capacity were not briefed on appeal. Under Rule 2-12, Uniform Rules— Courts of Appeal, we may consider as abandoned any assignment of error not briefed. Accordingly, we do not address *553 these two exceptions, finding them abandoned.
Lastly, Trans La and T-Lig raised a dec-linatory exception of improper venue which was denied by the trial court. They argue that the only proper venue is in East Baton Rouge Parish, the domicile of the PSC. At the heart of their argument is the contention that plaintiffs’ petition only challenges the rules, regulations, and rate orders of the PSC. Because of our foregoing analysis, we rejected this very limited characterization of plaintiffs’ petition, finding a well pleaded cause of action in state antitrust. Accordingly, we find that venue was proper in Lafayette Parish and thus the trial court’s ruling in this regard was eminently correct.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed equally among the defendants; costs of trial are to be assessed at the conclusion of the trial.
AFFIRMED.
PER CURIAM.
In our opinion, we inadvertently referred to the dilatory exception of lack of procedural capacity filed by Trans La and T-Lig, as not being briefed on appeal, therefore we considered the assignment as abandoned. As correctly brought out by Trans La and T-Lig in their application for rehearing, this dilatory exception is still pending in the trial court and was not an issue in this appeal. Accordingly, with this per curiam we correct this inadvertence by revoking our prior ruling on the dilatory exception of lack of procedural capacity. Otherwise, the applications for rehearing filed by all defendants are hereby denied.

.As correctly noted by defendant, this appeal required expeditious handling due to the involvement of questions concerning antitrust violations. Thus, under LSA-R.S. 51:134, the following requirements are provided:
"In all cases under this Part the defendant shall file all exceptions in limine litis, or if necessary in the alternative, after the usual delays, and any additional delays as the court may allow; however, a plea to the jurisdiction is not waived by other pleas or exceptions filed. The judge shall take up such exceptions in preference over all other business and shall decide all questions raised in the exceptions within ten days after submission, and his ruling shall have the effect of res judicata, unless the party cast shall appeal within five days. The appeal is returnable within ten days to the appellate court which shall hear and determine the case within forty days. If the exceptions are overruled by final judgment of the appellate court, the defendant shall file his answer covering all questions of controverted fact within fifteen days, and the case may be set for trial on the application of either party, which case the judge shall consider in preference over all other business."

. Plaintiffs have also alleged breach of contract pour autrui, breach of fiduciary duty, fraud and unjust enrichment. These issues are not before us in this appeal.

. The plaintiffs are: The Daily Advertiser; Richard D’Aquin; Mr. Cook Licensing Corporation d/b/a Mr. Cook Restaurants; Compagnie Vermilion Incorporated, Compagnie CL-BM, Ltd; and C. Earl Hagood, Jr., individually and on behalf of a class of all others similarly situated.

. It is averred that when the 1983 contract was perfected, Trans La and LIG were wholly owned subsidiaries of Celeron, Inc. Subsequently, Trans La was spun out and became a division of Atmos Energy Corporation, d/b/a Energas Company; T-Lig is a subsidiary of Trans La; Lig Chem and Tuscaloosa are subsidiaries of LIG.

. In further explanation of WACOG, we find it appropriate to set forth paragraphs 15 and part of 16 of plaintiffs petition:
“15.
The allowable rate that a pipeline operator such as LIG may charge a local distribution company such as TRANS-LA for intrastate natural gas is set by reference to its 'weighted average cost of gas' (‘WACOG’). A pipeline operator files with the Louisiana Public Service Commission (‘PSC’) a schedule of its monthly gas purchases detailed by producer, contract number, meter volume of gas delivered, and the amount paid. The total dollars paid are divided by the total gas purchased to arrive at the allowable monthly WACOG. The rate to a local distribution system such as TRANS-LA is WACOG, as adjusted monthly, plus a PSC-approved profit amount per mcf. which in the instant case was $0.13 per mcf. to be added to the WACOG (see PSC Rate Schedule GR-40 attached as Exhibit ‘A-V and PSC Order No. U-12587 dated November 22, 1974 approving PSC Rate Schedule GR-40, a copy of which is attached hereto and made a part hereof as Exhibit A-2’).
16.
A. The price that a local distribution system such as TRANS-LA may charge per mcf. of natural gas to its retail customers is its actual cost per mcf. of acquiring natural gas from pipeline operators (e.g., in this case, LIG). TRANS-LA is also allowed a certain 'return on equity' investment. The PSC regulates local natural gas distribution companies such as TRANS-LA and controls how much a return on equity TRANS-LA is permitted in a given year."

. LSA-R.S. 51:137:
"Section 137. Damages recoverable for violation of law
Any person who is injured in his business or property by any person by reason of any act or thing forbidden by this Part may sue in any court of competent jurisdiction and shall recover threefold the damages sustained by him, the cost of suit, and a reasonable attorney’s fees.”

. At this stage of the proceeding, the 1983 contract has not been admitted into evidence. From plaintiffs’ petition it is alleged that Trans La entered into a ten year contract with LIG in which Trans La was obligated to obtain all intrastate natural gas from LIG unless LIG waived this "all requirement” provision. It is unclear at this point whether the other defendants were signatories to this contract.

. The defendants sought to remove this case to the United States District Court for the Western District of Louisiana; however, the federal court found the removal improvident and remanded this action to the state district court.

. Const. Art. 4 Section 21.

. LSA-R.S. 45:303 and 1163.